# EXHIBIT A

ELECTRONICALLY FILED - 2021 Sep 13 8:38 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004222

| | |
|---|---|
| STATE OF SOUTH CAROLINA ) <br> COUNTY OF CHARLESTON ) <br> ) <br> SEAN BAUER, GIOVANNI BROWN, ) <br> ALEXIS CHAVEZ, TEDDY GORMAN, ) <br> HAMPTON JENKINS, SARAH ) <br> MIDGETT, PATRICK NORWOOD, ) <br> JAMES ROMER, MICHAEL SALVO, ) <br> DONAVAN SNOVEL, JAMES ) <br> STEWART, HOWARD THOMAS IV, ) <br> PAUL WATSON, and ALEX ) <br> WILKINSON ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> R. KEITH SUMMEY, in his official and ) <br> individual capacities; CITY OF NORTH ) <br> CHARLESTON, ) <br> ) <br> Defendants. ) | IN THE COURT OF COMMON PLEAS <br> FOR THE NINTH JUDICIAL CIRCUIT <br><br> Case No. <br><br> **SUMMONS** |

TO THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this complaint upon the subscriber, at the addresses shown below, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the complaint, judgment by default will be rendered against you for the relief demand in the complaint.

Charleston, South Carolina
September 13, 2021

| | |
|---|---|
| **GOLDFINCH WINSLOW, LLC** <br> s/ Tom Winslow <br> **Thomas W. Winslow** <br> 11019 Ocean Highway <br> Pawleys Island, SC 29576 <br> Phone: (843) 357-9301 <br> Facsimile: (843) 357-9303 <br> Tom@GoldfinchWinslow.com | **FERNANDEZ LAW LLC** <br> s/ Tom Fernandez <br> **Thomas M. Fernandez** <br> 108 Whaler Avenue <br> Summerville, SC 29486 <br> Phone: (843) 580-6045 <br> Facsimile: (843) 970-1814 <br> Tom@TomFernandezLaw.com <br> *Attorneys for the Plaintiffs* |

1

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF CHARLESTON | IN THE COURT OF COMMON PLEAS<br>FOR THE NINTH JUDICIAL CIRCUIT |
| SEAN BAUER, GIOVANNI BROWN, ALEXIS CHAVEZ, TEDDY GORMAN, HAMPTON JENKINS, SARAH MIDGETT, PATRICK NORWOOD, JAMES ROMER, MICHAEL SALVO, DONAVAN SNOVEL, JAMES STEWART, HOWARD THOMAS IV, PAUL WATSON, and ALEX WILKINSON<br><br>Plaintiffs,<br><br>vs.<br><br>R. KEITH SUMMEY, in his official and individual capacities; CITY OF NORTH CHARLESTON,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

COMES NOW Plaintiffs Sean Bauer, Giovanni Brown, Alexis Chavez, Teddy Gorman, Hampton Jenkins, Sarah Midgett, Patrick Norwood, James Romer, Michael Salvo, Donavan Snovel, James Stewart, Howard Thomas IV, Paul Watson, and Alex Wilkinson bring this action for declaratory relief and alleges as follows:

## PARTIES

1. Plaintiff Sean Bauer ("Bauer") is, and at all times herein, was employed by the City of North Charleston Police Department (NCPD). Bauer has been with the NCPD for fifteen (15) years and worked in Patrol, as a Detective, School Resource Unit and was a Field Training Officer. He is currently a Glock Armorer and Master Patrol Officer.

2. Plaintiff Giovanni Brown ("Brown") is, and at all times herein, was employed by the City of North Charleston Police Department (NCPD). Brown has been with the NCPD for nine

(9) years and he investigates traffic collisions and fatalities.

3. Plaintiff Alexis Chavez ("Chavez") is, and at all times herein, was employed by the City of North Charleston Fire Department (NCFD). Chavez has been with the NCFD for two (2) years and is a firefighter.

4. Plaintiff Teddy Gorman ("Gorman") is, and at all times herein, was employed by the City of North Charleston Police Department (NCPD). Gorman has been with the NCPD for twelve (12) years and has worked in the traffic unit, where he has completed six (6) collision reconstruction classes, including Commercial MV level 1. He is currently temporarily assigned to the radio shop, where he is building and installing the police equipment in police vehicles.

5. Plaintiff Hampton Jenkins ("Jenkins") is, and at all times herein, was employed by the City of North Charleston Police Department (NCPD). Jenkins has been with the NCPD for twenty-one (21) years and has served with the under covers unit, the Neighborhood Resource Officer Unit, and the Road Patrol. He was the senior Corporal for the department and has been the officer of the month, holds multiple certificates of appreciation, and a certificate of valor.

6. Plaintiff Sarah Midgett ("Midgett") is, and at all times herein, was employed by the City of North Charleston Police Department (NCPD). Midgett has been with the NCPD for eleven (11) years and a police officer for over eighteen (18) years. She is currently assigned to the North Charleston Housing Authority, where she investigates criminal activity in the federally funded Housing Choice Voucher Program, also known as Section 8. She is the only police officer in the NCPD assigned to this task, had news articles written about her[1],

---

[1] Post and Courier, Helping people is North Charleston police officer's mission in life (May 25, 2020).

2

ELECTRONICALLY FILED - 2021 Sep 13 8:38 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004222

and she has served in this position since 2013 and hopes to retire from this position. She is currently a Master Patrol Officer.

7. Plaintiff Patrick Norwood ("Norwood") is, and at all times herein, was employed by the City of North Charleston Fire and Police Departments (NCFD & NCPD). Norwood has been with the City of North Charleston for seventeen (17) years. He worked for four (4) years as a Firefighter and thirteen (13) years with the NCPD. He is certified in Active Shooter incidents, is a Certified School Resource Officer, National Gang Resistance Educator, Training Instructor, Firefighter II State Certified, and HAZMAT Technician among others. He has worked as a School Resource Officer in Charleston and Dorchester County Schools, served on the Police and Community Engagement and is currently a Master Patrol Officer working in the North Charleston Patrol Division. He has received letters of appreciation from citizens he serves and from Chiefs of The Department. He holds a bachelor's degree in Criminal Justice from The Citadel.

8. Plaintiff James Romer ("Romer") is, and at all times herein, was employed by the City of North Charleston Fire Department (NCFD). Romer has been with the NCFD for fourteen (14) years and is an engineer/EMT-B. He supervises a two-to-three-man engine company/boat crew and all operations that go on at his station when he is there.

9. Plaintiff Michael Salvo ("Salvo") is, and at all times herein, was employed by the City of North Charleston Fire Department (NCFD). Salvo has been with the NCFD for eighteen (18) years and is a Captain/EMT. He has served on various teams including Haz-Mat team, Technical Rescue Team, MIRT team, and the Honor Guard.

10. Plaintiff Donavan Snovel ("Snovel") is, and at all times herein, was employed by the City of North Charleston Fire Department (NCFD). Snovel has been with the NCFD for eleven

(11) years and is a Fire Captain and Acting Battalion Chief. He holds a bachelor's degree in OSHA and an MBA.

11. Plaintiff James Stewart ("Stewart") is, and at all times herein, was employed by the City of North Charleston Police and Fire Departments (NCPD & NCFD). Stewart worked with the NCFD for seven (7) years working his way to Engineer and then transferred to the NCPD where he has been for six (6) years.

12. Plaintiff Howard Thomas IV ("Thomas") is, and at all times herein, was employed by the City of North Charleston Police Department (NCPD). Thomas has been with the NCPD for twelve (12) years and is a second-generation police officer with NCPD with his father currently a Lieutenant with the NCPD. Salvo has served on patrol, with the Traffic Unit, and on the riot team. He is a motorcycle operator, is DUI certified, a certified collision reconstructionist, and received letters of recognition.

13. Plaintiff Paul Watson ("Watson") is, and at all times herein, was employed by the City of North Charleston Police Department (NCPD). Watson has been with the NCPD for sixteen (16) years and has worked as a School Resource Officer.

14. Plaintiff Alex Wilkinson ("Wilkinson") is, and at all times herein, was employed by the City of North Charleston Police Department (NCPD). Wilkinson has been with the NCPD for three (3) years and in law enforcement six (6) years. He is currently assigned to the Patrol Division and was awarded Officer of the Month for May of 2021.

15. Defendant R. Keith Summey is the Mayor of the City of North Charleston ("Mayor"), and with the City of North Charleston are collectively referred to as "Defendants."

ELECTRONICALLY FILED - 2021 Sep 13 8:38 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004222

ELECTRONICALLY FILED - 2021 Sep 13 8:38 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004222

## FACTS AND ARGUMENT

### I. THE MAYOR'S COVID VACCINE MANDATE VIOLATES THE SOUTH CAROLINA CONSTITUTION, SOUTH CAROLINA COMMON LAW, AND THE UNITED STATES CONSTITUTION

16. Plaintiffs bring this action seeking a declaratory judgment regarding their rights and responsibilities to make medical decisions for themselves under the Constitution of the State of South Carolina, South Carolina common law, and the Constitution of the United States. Plaintiffs are seeking a temporary restraining order and preliminary injunction to enjoin enforcement of the Mayor's order (below) after providing the Defendants with the notice as required by SCRCP 65.

17. On September 1, 2021, Mayor Summey issued Executive Order Number 2021-001 ("EO No. 21-001"), attached as **Exhibit A**, which purported to impose a mandatory vaccine requirement on all city employees, volunteers, and interns, whether working on a full or part time schedule ("employees"). EO No. 21-001 mandates that compliance is a condition of continued employment. The order sets the compliance date as November 5, 2021. The individual plaintiffs are City employees as defined in EO No. 21-001 who want to exercise control over their own medical treatment and are being forced to choose between their rights, privileges, and liberties as citizens on the one hand and their employment, careers, and financial futures on the other.

18. Plaintiffs seek an order declaring EO No. 21-001 as unenforceable because it conflicts with the South Carolina Constitution's guarantee of free expression, violates the South Carolina's Home Rule Act, violates DHEC's General Supervision of Vaccination, Screening, and Immunization, would result in a common law wrongful discharge of the Plaintiffs, and conflicts with the United States Constitution's guarantee of equal protection,

free exercise, and due process.

### A. THE MAYOR'S COVID VACCINE MANDATE VIOLATES PLAINTIFFS' PROTECTED RIGHT TO EXPRESSIVE SPEECH AND EXPRESSIVE CONDUCT UNDER THE SOUTH CAROLINA CONSTITUTION.

19. Article I, Section 2 of the South Carolina Constitution states:

> "The General Assembly shall make no law respecting an establishment of religion or prohibiting the free exercise thereof, or abridging the freedom of speech or of the press; or the right of the people peaceably to assemble and to petition the government or any department thereof for a redress of grievances."

20. With very few exceptions, none of which apply here, all speech and expressive conduct are constitutionally protected. Plaintiffs' right to control their own medical destinies is both *expressive speech* in the form of opposition to the COVID-19 vaccine, and *expressive conduct* in opposition to the vaccine mandate.

21. Here, EO No. 21-001 is written in terms directed to the substance of an opinion or subject of communication. Plaintiffs' words and conduct *express a clear and unequivocal opinion* as to the COVID-19 vaccine mandate by Mayor Summey. Because EO 21-001 is directed as the substance of that opinion and the subject of Plaintiffs' communications it is constitutionally impermissible.

### B. THE MAYOR'S COVID VACCINE MANDATE VIOLATES THE SOUTH CAROLINA HOME RULE ACT

22. To the extent EO 21-001 is focused on the harms or effects of COVID-19 but by its terms it expressly prohibits the expression of the Plaintiffs, and others, to achieve its ends. EO 21-001 purports to prohibit or regulate the constitutionally protected expression of the Plaintiffs and is therefore overbroad and constitutionally impermissible.

23. South Carolina's Home Rule Act, S.C. Code Ann. §§ 5-7-10 to -310 (2004), allows a city to declare a state of emergency under an alleged need to preserve the "health, peace, order

ELECTRONICALLY FILED - 2021 Sep 13 8:38 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004222

and good government of its citizens." However, the Home Rule doctrine in no manner serves as a license for local governments to countermand state law or the South Carolina Constitution. See, e.g., *City of North Charleston*, 306 S.C. at 156, 410 S.E.2d at 571 (noting a grant of police power to local governments is given with the caveat that the locality may not enact ordinances that conflict with state law). see also *Williams v. Town of Hilton Head Island*, 311 S.C. 417, 422, 429 S.E.2d 802, 805 (1993) (explaining Home Rule "bestow[s] upon municipalities the authority to enact regulations . . . so long as such regulations are not inconsistent with the Constitution and general law of the state").

24. A declaration of an emergency does not alter this settled principle, for otherwise local governments could arbitrarily and unilaterally ignore legislative enactments by the General Assembly or the South Carolina Constitution.

25. Resolving a conflict between state law and a city (or county) ordinance invokes the principle of preemption.

> Conflict preemption occurs when the ordinance hinders the accomplishment of the statute's purpose or when the ordinance conflicts with the statute such that compliance with both is impossible. See *Peoples Program for Endangered Species v. Sexton*, 323 S.C. 526, 530, 476 S.E.2d 477, 480 (1996) ("To determine whether the ordinance has been preempted by Federal or State law, we must determine whether there is a conflict between the ordinance and the statutes and whether the ordinance creates any obstacle to the fulfillment of Federal or State objectives."); . . . 56 Am. Jur. 2d *Municipal Corporations* [§] 392 [(2000)] ("[Implied] conflict preemption occurs when an ordinance prohibits an act permitted by a statute, or permits an act prohibited by a statute[.]") . . . .

*S.C. State Ports Auth. v. Jasper Cnty.*, 368 S.C. 388, 400–01, 629 S.E.2d 624, 630 (2006).

26. Whether EO 21-001 is determined to be directed at the substance of an opinion or communication, or at the harms or effects of COVID-19, the Mayor's mandate it is unconstitutional under Article I, Section 2 of the South Carolina constitution and

7

completely controverts the principle of the Home Rule Act.

27. Mayor Summey has placed Plaintiffs and all City employees in an untenable situation; forcing them to decide between their livelihoods and vindicating their statutory and constitutional rights is unconscionable and wrong.

### C. THE MAYOR'S COVID VACCINE MANDATE SETS ASIDE LAWS PROTECTED BY THE SOUTH CAROLINA CONSTITUTION AND RESERVED TO THE STATE OF SOUTH CAROLINA

28. Article VIII, Section 14 of the South Carolina Constitution states:

> "**In enacting provisions required or authorized by this article, general law provisions applicable to the following matters shall not be set aside: (1) The freedoms guaranteed every person**; (2) election and suffrage qualifications; (3) bonded indebtedness of governmental units; (4) the structure for and the administration of the State's judicial system; (5) criminal laws and the penalties and sanctions for the transgression thereof; and **(6) the structure and the administration of any governmental service or function, responsibility for which rests with the State government or which requires statewide uniformity.** (1972 (57) 3184; 1973 (58) 67.)." (emphasis added)

29. S.C. Code Ann. § 44-29-40 states:

> (A) The Department of Health and Environmental Control shall have general direction and supervision of vaccination, screening, and immunization in this State. The Department of Health and Environmental Control has the authority to promulgate regulations concerning vaccination, screening, and immunization requirements.

30. The Department of Health and Environmental Control (DHEC) has the authority to declare regulations concerning vaccination and immunization requirements; South Carolina municipalities do not.

31. Defendants' EO is preempted by both state law and the South Carolina Constitution.

32. Resolving a conflict between state law and a city (or county) ordinance invokes the principle of preemption. *S.C. State Ports Auth. v. Jasper Cnty.*, 368 S.C. 388, 400–01, 629 S.E.2d 624, 630 (2006).

33. The Mayor's mandate is unconstitutional under Article VIII, Section 14 of the South Carolina constitution and completely controverts the principle of DHEC's General Supervision of Vaccination, Screening, and Immunization.

### D. THE MAYOR'S COVID VACCINE MANDATE VIOLATES PLAINTIFFS' PROTECTED RIGHTS UNDER THE UNITED STATES CONSTITUTION

34. Further, the First Amendment of the United States Constitution states:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people to peaceably to assemble, and to petition the Government for a redress of grievances.

By compelling the Petitioners to receive the COVID-19 vaccine, or be fired, Mayor Summey is violating Plaintiffs' First Amendment protected right of free speech to express a message with which the Plaintiffs disagree with. See *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Com'n*, 138 S.Ct. 1719, 1729 (2018) (cake design can be expressive speech); *Citizens United v. Federal Election Com'n*, 558 U.S. 310, 339 (2010) (holding money is equivalent to speech).

35. Article I Section 3 of the South Carolina Constitution states,

> "The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged, nor shall any person be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws."

Mayor Summey's executive order grants some employees of the City of North Charleston the ability to be employed, which is a privilege, which does not equally belong to all employees of the City of North Charleston. The EO on its face only applies to some City Employees. The EO fails to explain why it applies to only certain employees and not others.

36. Article XIV Section 1 of the United States Constitution states:

> "No state shall make or enforce any law which shall abridge the privileges

ELECTRONICALLY FILED - 2021 Sep 13 8:38 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004222

or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The Executive Order states that City of North Charleston employees are prohibited from engaging in work if they are not fully vaccinated. **Exhibit A.** Executive Order 21-001 deprives Plaintiffs of their property interest in their jobs at the City of North Charleston without due process. To the extent Plaintiffs are treated differently from other similarly situated employees the Executive Order is also a violation of the Plaintiffs' right to equal protection under the law.

37. Finally, the Public Readiness and Emergency Preparedness (PREP) Act Declaration was issued in March 2020 which covers COVID-19 tests, drugs, and vaccines providing liability protections to manufacturers, distributors, state, local, territorial, and tribal health agencies, licensed healthcare professionals and other qualified persons who administer COVID-19 countermeasures.

38. The effect of the PREP Act is that all the manufacturers and others are granted immunity from liability (except willful misconduct) for claims of loss caused by, arising out of, relating to, or resulting from the administration or use of covered countermeasures to diseases, threats and conditions identified in the declaration. Mayor Summey's COVID-19 vaccine mandate, coupled with nearly complete immunity of the PREP Act, deprives Petitioners any recourse legal recourse. The PREP Act liability protections end on October 1, 2024.

ELECTRONICALLY FILED - 2021 Sep 13 8:38 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004222

WHEREFORE, Plaintiffs pray for a judgment declaring Mayor Summey's Executive Order 21-001 unlawful and enjoining its enforcement, because:

(a) The order violates Plaintiffs' rights to free expression under the South Carolina Constitution Article I Section 2.

(b) The order violates the South Carolina Home Rule Act.

(c) The order violates DHEC's General Supervision of Vaccination, Screening, and Immunization.

(d) The order violates Plaintiffs' rights to free speech under the United States Constitution.

(e) The order violates the grant of equal protection under the law in the United States Constitution.

(f) The order deprives Plaintiffs of their employment without due process of law in violation of the United States Constitution.

(g) The order would result in the wrongful termination of the Plaintiffs if enforced.

Respectfully submitted,

**GOLDFINCH WINSLOW, LLC**

s/ Tom Winslow
**Thomas W. Winslow**
11019 Ocean Highway
Pawleys Island, South Carolina 29576
Phone: (843) 357-9301
Facsimile: (843) 357-9303
Tom@GoldfinchWinslow.com

**FERNANDEZ LAW LLC**

s/ Tom Fernandez
**Thomas M. Fernandez**
108 Whaler Avenue
Summerville, South Carolina 29486
Phone: (843) 580-6045
Facsimile: (843) 970-1814
Tom@TomFernandezLaw.com

*Attorneys for the Plaintiffs*

Executive Order #: 2021-_001_ (Covid 19)

An Executive Order Establishing a
# CITY OF NORTH CHARLESTON
# MANDATORY COVID-19 VACCINATION POLICY

## SECTION I. PURPOSE

The on-going pandemic has created an infectious disease threat to our community and to the world that is unprecedented in our time. The recent surge in cases created by the "Delta" and other evolving variants has further heightened a compelling interest in preventing the spread of this life-threatening disease.

The national Centers for Disease Control ("CDC") has identified vaccination as a "critical prevention measure" to help end the pandemic. This guidance is supported by clinical trials, scientific research, and extensive safety monitoring which have demonstrated the safety and effectiveness of currently-available vaccines. The U.S. Food and Drug Administration ("FDA") has now given full standard approval to the Pfizer vaccine in addition to emergency use approval of the Moderna and the Janssen (a/k/a Johnson & Johnson) vaccines. These vaccines provide protection against infection and, even when post-vaccination infection occurs, they provide demonstrated protection from more serious symptoms, including those leading to hospitalization and death.

In an effort to achieve and maintain a workplace that is free from this known health and safety hazard, we hereby adopt this Mandatory Vaccination policy to protect our employees and their families as well as vendors, visitors, and the citizens we serve.

The requirements and provisions of this policy are based on current guidance from the CDC and other health officials and comply with all applicable workplace laws. As the underlying science and related issues evolve, this policy may be modified as necessary to take into accounts new developments and additional guidance.

## SECTION II. COVERED INDIVIDUALS

The requirements of this policy apply to all employees, volunteers and interns, whether working on a full or part time schedule.

## SECTION III. DEFINITIONS

"COVID-19 vaccine" or "vaccine" means, for the purposes of this policy, any vaccine approved by the FDA to prevent the virus caused by COVID-19. This includes not only vaccines with full standard FDA approval, but also those with approval for emergency use.

A "Fully Vaccinated" individual is one who has: (1) for no less than two weeks, completed the entire recommended series of a Janssen, Moderna, or Pfizer vaccine (or such additional future vaccines as may receive FDA approval as required herein); and (2) provided proof of vaccination in the form of a completely executed CDC vaccination card.

PLAINTIFF'S EXHIBIT A

1

ELECTRONICALLY FILED - 2021 Sep 13 8:38 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004222

A "Partially Vaccinated" individual is one who has: (1) received one dose of a two-dose series of Moderna or Pfizer (or any similar two-dose Vaccine which might receive FDA approval in the future); **or** (2) has completed the full recommended series of any FDA approved vaccine but has not yet completed the full two-week immunity-building period: **and** (3) has provided proof of vaccination in the form of a completely executed CDC vaccination card.

NOTE: Falsification of vaccine cards will subject an employee to discipline up to and including immediate discharge from employment.

## SECTION IV. POLICY

All employees, volunteers and interns must, as a condition of continued employment (or volunteer/intern) status, become Fully Vaccinated by **November 5, 2021**. For convenience and to facilitate compliance, one or more on-site or employer-sponsored clinics offering the Pfizer vaccine will be held on dates to be announced. Employees who prefer to take Moderna or Janssen vaccinations, or who prefer to be vaccinated at other times or locations may comply using any of those alternative resources.

    A. COMPLIANCE DEADLINES:

**September 9, 2021** – Employees who wish to take advantage of the on-site or employer-sponsored clinic must pre-register with Janie King for the purposes of identifying how many shots will need to be made available.

**September 20, 2021**- all employees, volunteers and interns must be partially or fully vaccinated or must have submitted a request for exemption.

**November 5, 2021** - all employees, volunteers and interns must be Fully Vaccinated or must have submitted a request for exemption.

    B. DEADLINE DEFERRALS:

- Individuals who are in a prolonged leave status (such as on continuous FMLA leave) may request a deferral of the vaccine until their return to work if they will not be returning to work until after [Fully Vaccinated Deadline]. All such individuals must be Fully Vaccinated before returning from leave.

- Individuals who provide documentation of having been treated for an actual COVID-19 infection with monoclonal antibodies may request to defer becoming Partially Vaccinated until the date not more than 90 days after the date of monoclonal antibodies treatment. Thereafter, the individual must become Fully Vaccinated by the date seven weeks after becoming Partially Vaccinated.

ELECTRONICALLY FILED - 2021 Sep 13 8:38 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004222

- Individuals who test positive for COVID-19 between now and any deadline may, with proof of the positive test, be permitted to defer that deadline until after their CDC-recommended quarantine period.

- Individuals who have submitted a written request for an exemption which request was denied must be Partially Vaccinated within 14 calendar days of denial, and Fully Vaccinated within 9 weeks of that same date.

## C. EXEMPTIONS TO VACCINE REQUIREMENT

In accordance with various state and federal laws, employees may be granted exemption from the Vaccine mandate under the limited circumstances discussed below. Generally, volunteers and unpaid interns are not entitled to these exemptions, but they may make a request which will be considered on a case-by-case basis. Individuals may request accommodation without fear of retaliation. Any health information/documentation disclosed as part of the process will be kept secured as is all protected health information.

### 1. MEDICAL EXEMPTIONS AND ACCOMMODATIONS

Individuals may request a medical exemption and reasonable accommodation to the Vaccination requirement if they:

- Have a contraindication recognized by the CDC or by the Vaccine's manufacturer to every approved COVID-19 vaccine. A contraindication means a condition that makes vaccination inadvisable. Appropriate documentation from a health care provider will be required as part of the interactive process during which reasonable accommodation will be explored. See "Accommodations" below.

*OR –*

- Have a disability and are requesting a medical exception as a reasonable accommodation. Appropriate documentation from a health care provider will be required as part of the interactive process. See "Accommodations" below.

### 2. RELIGIOUS EXEMPTIONS AND ACCOMMODATIONS

- Individuals may request a religious exemption and reasonable accommodation based on their sincerely held religious belief, practice or observance. You will be asked to identify your religious

ELECTRONICALLY FILED - 2021 Sep 13 8:38 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004222

requirement or belief and explain how it is in conflict with this policy. See "Accommodations" below.

### D. ACCOMMODATIONS FOR INDIVIDUALS GRANTED EXEMPTIONS

Individuals who are granted exemptions will be exempt from the vaccination requirement only – they will not be exempt from the essential job duty of participating in workplace safety via their reasonable accommodation/alternate means of performing that duty. What accommodation is best suited to the employment and personal circumstances of the individual in question will be determined on a case-by-case basis. It is not possible to describe every possible accommodation, but an example of an accommodation might include weekly or other periodic testing combined with use of mask and/or other safety equipment in lieu of vaccination. Another example might be a leave of absence. Applicable laws do not require accommodations that would impose undue employer hardships, or which would pose a direct threat to the health and safety of other employees.

Requests for exemptions/accommodations must be made *no later than* September 20, 2021. To avoid non-compliance, requests should be made as soon as possible.

All requests for exemptions/accommodations should be made through the Human Resources office. That office will provide you with official forms which must be used to document requests and will explain to you how to complete the process and identify any documentation required.

At the conclusion of the process, you will receive written response(s) either granting or denying your request. If the exemption is granted, you will also be notified of the specific accommodation granted by which you will participate in alternative safety measures in lieu of vaccination.

### SECTION V. ACKNOWLEDGMENT

The requirements of this policy are essential to our efforts to provide a workplace free of known hazards and to meet the compelling need to prevent and protect from the spread of the infectious disease caused by the COVID-19 virus.

To ensure that all covered individuals have received notice of this policy and its requirements, each employee, volunteer, and intern is required to sign the acknowledgment below. Your signature does not mean you necessarily agree with all or any part of the policy, but only that it has been provided to you, and you have been notified that compliance is a condition of continued employment, volunteer, or intern status.

ELECTRONICALLY FILED - 2021 Sep 13 8:38 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004222

NOTHING IN THIS EXECUTIVE ORDER SHALL BE CONSIDERED TO CREATE AN EMPLOYMENT CONTRACT OR ANY CONTRACTUAL RIGHT TO ANY TERM OR CONDITION OF EMPLOYMENT.

Effective Date of Executive Order: September 3, 2021

Executed this 1st day of September, in the year of Our Lord, 2021, and in the 245th year of the Independence of the United States of America.

*R. Keith Summey*
Mayor

Approved as to Form:

*Van Poolle*
Legal Counsel

ELECTRONICALLY FILED - 2021 Sep 13 8:38 AM - CHARLESTON - COMMON PLEAS - CASE#2021CP1004222